UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 13 |
| | : | |
| Kristin Wade Johannes, | : | Case No. 5:20-01044-MJC |
| | : | |
| Debtor. | : | |

# MEMORANDUM OPINION

Before the Court is the Final Application of Attorney for Chapter 13 Debtor for Compensation and Reimbursement of Expenses, filed on November 27, 2024, Doc. 48 ("Application") filed by Mr. Carlo Sabatini, Esquire as Counsel for the Debtor ("Applicant"), in which the Applicant requests "final" allowance of compensation in the amount of $3,409.00 and reimbursement of expenses in the amount of $28.50 for the period May 30, 2020 to November 25, 2024. For the reasons set forth below, the Application is granted in part and denied in part.

## I. BACKGROUND

### A. The Debtor's Bankruptcy Case.

On March 17, 2020, Debtor Kristin Wade Johannes ("Debtor") filed a Chapter 13 bankruptcy petition. Debtor's filed Schedules indicate that Debtor is married, employed as a medical technologist, his non-filing spouse is a nurse, and they list one (1) minor child dependent. Doc. 1. They have a total net monthly income of $12,847.54 (gross income is $18,690.19), monthly expenses of $9,441.90, leaving a monthly net income of $3,405.64. Doc. 1 (Schedules I and J).

The Debtor's 60-month Chapter 13 Plan provides for monthly payments of $2,650.00 for a total Plan payment of $145,755.00. Doc. 6. The Chapter 13 Trustee objected to the Plan but withdrew the objection prior to confirmation. Doc. 17, 22. On June 4, 2020 the Plan was

confirmed. Doc. 24. Twelve (12) proofs of claim were filed by Creditors totaling of $332,235.84, which includes a $161,939.86 secured mortgage loan and two (2) secured car loans totaling $43,048.04.

After a thorough review of the case docket, it is clear that the Debtor's case is a typical Chapter 13 consumer case in our District with no unusual or special circumstances.

### B. <u>Applicant's Fee Applications.</u>

Applicant had previously filed an Interim Application on October 9, 2020 requesting fees of $6,635.00 and reimbursement of expenses of $329.57 for the time period February 4, 2019 through May 29, 2020. Doc. 36. This Interim Application represented time through the confirmation of the Debtor's Plan. My predecessor Judge Robert N. Opel II approved the Interim Application by Order dated November 3, 2020. Doc 38. The Interim Application listed a total of 54.60 hours, prior to any discounts, billed to this routine consumer Chapter 13 case. Mr. Sabatini's time alone totaled 12.2 hours billed at $395 and $415 per hour.[1]

The final Application was filed on November 27, 2024. Doc. 48. The Application seeks additional compensation in the amount of $3,409.00 and reimbursement of expenses in the amount of $28.50 for the period May 30, 2020 to November 25, 2024.[2] The Application represents time relating to post-confirmation services. The Application lists a total of 22.10 additional hours (before discount) for a gross billing of $6,407.50. Doc. 48-2. Mr. Sabatini has billed an additional 7.9 hours, and his associate billed 6.30 hours of attorney time. Applicant then applied a discount of 10.12 hours which reduced the invoice to $3,409.00.

---

[1] It is noted that 21.4 of the hours by "JMM" were billed at $0.00 and Applicant subtracted an additional 5 hours from the invoice. Although the Court has the authority to review the Interim Application, it has not conducted a thorough review of the invoice given Judge Opel's approval in 2020.

[2] Taking the two (2) Applications together, the total fees requested by Applicant is $10,044.00.

2

Case 5:20-bk-01044-MJC    Doc 60    Filed 01/20/26    Entered 01/20/26 16:14:17    Desc
Main Document      Page 2 of 9

The Applicant's Invoice spans five (5) pages comprising mostly of ".10" and ".20" increments of time entries. These entries provide a "receive, review, and respond" entry to every conceivable detail of a post-confirmation Chapter 13 case. The only "extra" work of substance related to a routine objection to an unsecured proof of claim that was unopposed. Doc. 41.

The Court held a hearing on the Application on January 14, 2025.[3] At the hearing the Applicant incorporated his arguments made in the *DeCantis* case (Case No. 5:22-01826-MJC)("*DeCantis* Case") and submitted a supplemental Letter Brief. Doc. 51.[4]

**II.  DISCUSSION**

Bankruptcy Courts have a *duty* to review fee applications notwithstanding the absence of any objections by any interested party. 11 U.S.C. § 330(a); *In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 841 (3d Cir.1994). "The court's responsibility to protect the estate is especially important in chapter 13 cases where there is little motivation for a debtor, or creditors, to object to a particular fee allowance." *In re Szymczak*, 246 B.R. 774, 778 (Bankr. N.J. 2000). A court's "overriding obligation" when examining a professional's fee application is to "protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors." *Busy Beaver*, 19 F.3d at 844. In discussing the "duty of to preserve the integrity of the court," the *Busy Beaver* Court cited to *In re Evans,* 153 B.R. 960, 968 (Bankr.E.D.Pa. 1993):

---

[3] Mr. Sabatini appeared at the hearing. The Debtor did not appear. Counsel for the Trustee appeared but did not lodge any objection to the Application. However, Trustee counsel was under the mistaken belief that this was the sole application for fees by the Applicant and did not realize that the Applicant had already billed almost $7,000 to the bankruptcy estate. Hearing Audio at 11:09.

[4] In *DeCantis*, Applicant billed the Estate almost $12,000 in a similar relatively simple and routine Chapter 13 case. The Trustee objected to these fees and entered into a Stipulation with the Applicant agreeing to reduce the fees by $3,354.50 (an almost 30% reduction). After a thorough review of the invoice and the case docket, the Court found that Applicant did not meet his burden in proving that his fees were reasonable and necessary and reduced his fees by an additional ten (10%). *Decantis* Case, Doc. 63. Applicant has appealed this Court's Order dated September 30, 2025 to the District Court (3:25-cv-01927-KM).

3

> [T]he integrity of the bankruptcy system ... is at stake in the issue of a bankruptcy judge's performance of the duty to review fee applications sua sponte. The public expects, and has a right to expect, that an order of a court is a judge's certification that the result is proper and justified under the law.... Nothing better serves to allay [public perceptions that high professional fees unduly drive up bankruptcy costs] than the recognition that a bankruptcy judge, before a fee application is approved, is obliged to [review it carefully] and find it personally acceptable, irrespective of the (always welcomed) observation of the [United States trustee] or other interested parties.

*Busy Beaver*, 19 F.3d at 841.

This Court has written extensively regarding Mr. Sabatini's excessive fees and billing practices and incorporates herein the Court's legal analysis in *In re Badyrka*, 2022 WL 4656034 (Bankr. M.D. Pa. 2022), *In re Beckhorn*, Case No. 5:21-0849-MJC (Bankr. M.D. Pa. November 17, 2022), *In re Roberson*, Case No. 5:22-02242-MJC (Bankr. M.D. Pa. March 27, 2024), and *In re DeCantis*, Case No. 5:22-01826-MJC (Bankr. M.D. Pa. September 30, 2025).[5] It is worth noting that the Court approves, without objection or reduction, the vast majority of fee applications presented. Typically, only fee applications that are substantially above the "norm" in this District are reviewed in detail by the Court.

As Applicant knows from many prior hearings regarding his fees, for requests for compensation, the burden of proof rests on the applicant to establish that the fees earned are reasonable and necessary. *Zolfo, Cooper & Co. v. Sunbeam-Oster Co.*, 50 F.3d 253, 261 (3d Cir. 1995) (citing *In re Metro Transp. Co.*, 107 B.R. 50, 53 (E.D. Pa. 1989)); *In re Pochron*, 2022 WL 1085459, at *2 (Bankr. S.D. Ohio 2022); *In re Murray*, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. 2007). "This burden is not to be taken lightly, especially given that every dollar expended on legal fees results in a dollar less that is available for distribution to the creditors or use by [the]

---

[5] Other fee applications analyzed by this Court include: *In re Carpenter*, 665 B.R. 89 (Bankr. M.D. Pa. 2024), *In re Thomas*, 2023 WL 6885827 (Bankr. M.D. Pa. 2023), and *In re Grove*, Case No. 5:20-0698-MJC (Bankr. M.D. Pa. March 31, 2023).

4

debtor." *In re Pettibone Corp.*, 74 B.R. 293, 299 (Bankr. N.D. Ill. 1987) (citing *In re Hotel Associates, Inc.*, 15 B.R. 487, 488 (Bankr. E.D. Pa. 1981)).

Under §330(a), the Court may award "reasonable compensation for actual, necessary services rendered" by the attorney and by other professionals "based on (i) the nature of the services, (ii) the extent of the services, (iii) the value of the services, (iv) the time spent on the services, and (v) the cost of comparable services in non-bankruptcy cases." *Busy Beaver*, 19 F.3d at 840; 11 U.S.C. §330(a)(3). A bankruptcy court has "broad discretion" to determine reasonable attorneys' fees, as the "bankruptcy court is more familiar with the actual services performed and has a far better means of knowing what is just and reasonable than an appellate court can have." *In re ASARCO, L.L.C.*, 751 F.3d 291, 294 (5th Cir. 2014) (citing *In re Lawler*, 807 F.2d 1207, 1211 (5th Cir. 1987) (internal quotation marks and citation omitted)); *In re Smith*, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005).

This District set a Presumptively Reasonable Fee ("PRF") for routine Chapter 13 cases of $4,500, L.B.R. 2016-2 (c), which Courts have used as a "starting point" to what should be considered a "reasonable" fee in a routine Chapter 13 case. *See In re Jones,* 661 B.R. 922, 925 (Bankr. E.D. Pa. 2024)(no-look amount acts as a guidepost for assessing reasonable fees); *In re Schuman*, 2013 WL 1195279, at *6-7 (Bankr. N.D.N.Y. 2013) (describing presumptive fee as "pre-calculated lodestar" and utilizing it as a starting point for review of lodestar fee applications).[6] As set forth above, the two (2) Applications total $10,044.00, which is double this District's PRF.

Upon a thorough review of the case docket and the Applicant's submissions, the Court finds that this case is a standard or routine Chapter 13 case with no unique or complex issues and that a reduction in the amount of allowed compensation is necessary due to charges for services

---

[6] The PRF in this District was increased to $5,000 effective for cases filed on or after October 1, 2024.

5

that are non-billable administrative tasks, paralegal or secretarial duties that should have been billed at non-attorney rates, and for excessive time billed for certain tasks.[7] The Court bases these findings on its experience of over thirty-five (35) years of bankruptcy practice and as a Judge reviewing hundreds of fee applications.

Here, after a hearing and submission of additional supporting papers, the Court finds that Mr. Sabatini has not met his burden in supporting why he should be allowed fees that are substantially higher than all other practitioners in this District. At the hearing, Mr. Sabatini relied primarily on the arguments he made in the *DeCantis* case.[8]

The Application before the Court is for post-confirmation work. For post-confirmation services, typically an applicant will bill minimal attorney time and maybe 2 to 3 hours of paralegal time. It is the Court's experience, as confirmed by the vast number of other applications reviewed by the Court, that most of the substantive legal work is performed pre-confirmation and that post confirmation work should entail minimal legal work other than monitoring the case through conclusion.[9]

Typically, a review of legal invoices is a rather straight forward process. However, Applicant's invoices are convoluted in that they contain "gross" billing hours and amounts and then an amount discounted on some entries. The invoice attached to the Application has gross billings of 22.10 hours totaling $6,407.50 and then, apparently recognizing the excess hours billed,

---

[7] The court's authority (as opposed to its duty) to award less than the amount requested even when no objection is filed is indisputable and is grounded in the statute. *See* 11 U.S.C. § 329(b).

[8] In *DeCantis*, Applicant indicated "I'm not carrying my burden of showing where the time is being spent preparing the schedules" and "I recognize that I'm not meeting my burden …" *DeCantis*, Doc. 62, 9-10, 20 Tr. at 9, 20. When given additional post-hearing time, Applicant indicated that he was "unable to determine precisely what aspect of schedule preparation or plan review was being conducted on those dates." *DeCantis*, Doc. 61, at ¶44.

[9] For example, in this case the case docket reveals no substantive entries for the period May 11, 2021 through November 27, 2024.

applies discounts of 10.12 hours totaling $2,998.50. Doc. 48-2, p. 1.[10] Here, Mr. Sabatini's hourly rate is $415.00, which is one of the highest rates in our District.[11] Given the high billing rates, Applicant's hours billed should be less, not substantially more than other attorneys. The Court finds there is no justification for billing at the highest hourly rates in this District for clerical, paralegal and/or non-billable tasks.

In reviewing fees, the Court is not required to make a line-by-line analysis of the fee application. *See In re 388 Route 22 Readington Holdings LLC*, 2023 WL 4249266, at *3 (3d Cir. 2023); *Badyrka*, 2022 WL 4656034, at *9; *In re McKeeman v. Laughlin,* 236 B.R. 667, 672 (B.A.P. 8th Cir. 1999) ("When ... a case presents routine Chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fee accordingly. It is not necessary for the court to find that the time spent on any given task was excessive before reducing the award.") "Because its time is precious, the reviewing court need only correct reasonably discernible abuses, not pin down to the nearest dollar the precise fee to which the professional is ideally entitled." *Busy Beaver,* 19 F.3d at 845. In making a fee determination, the court must take into consideration whether the professional exercised "reasonable billing judgment." *In re Grosswiler Dairy, Inc.,* 257 B.R. 523, 528 (Bankr. D. Mont. 2000); *In re Mednet,* 251 B.R. 103 (9th Cir. BAP 2000).

At the January 14, 2025 hearing, the Court found that this case was a standard Chapter 13 case for this District.[12] The Court referenced several entries that appeared to be excessive, non-billable administrative, or overhead.

---

[10] In several prior hearings the Court has questioned Mr. Sabatini and continues to struggle to find any complexities in these cases to warrant billing so many hours.

[11] The associate attorney ($310/hour) and paralegal ($150/per hour) are also billed at highest levels in our District.

[12] "When a bankruptcy court determines that a case presents routine Chapter 13 matters, the court may review the fees requested in light of fees typically charged, and may reduce the requested fees accordingly.

7

Case 5:20-bk-01044-MJC    Doc 60    Filed 01/20/26    Entered 01/20/26 16:14:17    Desc
Main Document      Page 7 of 9

The only substantive legal work in the post-confirmation process was that Mr. Sabatini, his associate attorney and paralegal were all involved in the filing of a standard objection to a claim. Doc. 41. The creditor did not oppose the objection and the Court entered an Order sustaining the objection. Doc. 44. Applicant billed approximately $1,600 for this routine unopposed objection to an unsecured proof of claim.[13] The Court finds that two (2) hours of attorney time at most (which should include overhead for staff) should have been billed to this unopposed matter.

Likewise, the invoice is replete with "receive, review and respond" entries for many issues that ordinarily occur in Chapter 13 cases and which either should not be billed (exercise of billing judgment) or billed at a secretarial rate. For example, Applicant lists six (6) time entries on October 24 and 25 and November 6, 2020 for reviewing mortgage notices. Further, subsequent notices are each billed either by Mr. Sabatini and/or his paralegal (see entries on October 18, 2021, October 31, 2022, November 3, 2023, and November 8, 2024). This is excessive as each of these notices are "form" notices that typically reflect minor changes in mortgage payments due to an escrow analysis.

Lastly, on a November 11, 2025 entry, Applicant groups estimated paralegal time to close the case in one (1) entry of 1.40 hours and describes several routine case closing tasks. It appears that many of these tasks are routine form documents that should only take a few seconds or minutes at most to review or prepare.

---

It is not necessary for the court to find that the time spent on any given task was excessive before reducing the award." *Bachman v. Laughlin (In re McKeeman),* 236 B.R. 667, 672 (8th Cir. BAP 1999) (citing *In re Howell,* 226 B.R. at 280 and *In re Shamburger,* 189 B.R. at 973).

[13] A review of the invoice indicates that Applicant appeared to have billed a total of 8.3 hours relating to the objection before discounts This amount of billing is not justified for such a simple unopposed motion. *See Jones*, 661 B.R. at 928 ("In sum, simple cases call for solutions that are not complicated.").

As in *DeCantis*, the Court finds that the Applicant has not met his burden to support the excessive entries and has admitted that he is not able to meet his burden. Accordingly, the Court shall reduce Applicant's fees by $1,200.00.[14]

## III. CONCLUSION

For the reasons set forth above, and after considering the totality of the circumstances, the Court finds that Mr. Sabatini's Fee Application is excessive and hereby reduces compensation requested therein to the sum of $2,209.00 and reimbursement of expenses in the sum of $28.50 for the period from May 30, 2020 through November 25, 2024.

An appropriate order will be entered.

By the Court,

_____
Mark J. Conway, Bankruptcy Judge
Dated: January 20, 2026

---

[14] This reduction still provides Applicant with a fee substantially in excess of the PRF and what most other practitioners in this District charge in a routine consumer Chapter 13 case. As the Court has devoted substantial time and resources to the Applicant's fee applications in this and other cases, the Court did not review his first interim application in detail. The Court notes it appears to contain similar entries, including many entries relating to "checklists", that were found objectionable in *Badyrka*.